UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SARASOTA COUNTY
PUBLIC HOSPITAL BOARD,

    Plaintiff,

v.                                      CASE NO. 8:18-cv-2873-T-23SPF

BLUE CROSS AND BLUE SHIELD
OF FLORIDA, INC., et al.,

    Defendants.
_____/

## **ORDER**

The plaintiff, a public hospital, sues (Doc. S-7) two health insurers. The seventeen-count complaint, which was filed in state court and removed (Doc. 1), includes claims for breach of contract and violation of Section 648.513, Florida Statutes. The defendants move (Doc. 11) to dismiss the complaint. The plaintiff moves (Doc. 14) to remand and opposes (Doc. 21) the motion to dismiss.

### **BACKGROUND**

The plaintiff is the sole public hospital in Sarasota County. (Doc. 7 at ¶ 1) The defendants offer and administer health insurance. (Doc. S-7 at ¶ 2) Some of the defendants' members are enrolled in employee health benefit plans regulated by the Employee Retirement Income Security Act of 1974 (ERISA).

Beginning in 1994, the plaintiff entered into a "Preferred Patient Care Hospital Agreement" (PPC Agreement) with one defendant, Florida Blue, and a "Hospital Services Agreement" (HO Agreement) with the other defendant, Health Options. (Doc. S-7 at ¶ 17) The parties frequently renew and amend these "Provider Agreements." (Doc. S-7 at ¶ 18) The Provider Agreements establish both the terms under which the plaintiff offers "hospital services" to the defendants' members and the manner under which the defendants pay for those services. (Doc. S-7 at ¶ 19)

In the complaint, the plaintiff contends that the defendants breached the Provider Agreements by treating the plaintiff as a non-provider of hospital services with respect to "certain" health plans. (Doc. S-7 at ¶¶ 27, 30–37, 51, 56) In Count I, the plaintiff alleges that Florida Blue breached the PPC Agreement by failing to pay the plaintiff the agreed rates for hospital services. (Doc. S-7 at ¶ 47)[1] In Count III, the plaintiff alleges that the defendants breached the Provider Agreements by "advising, steering, and providing incentives to such [plan] members to seek hospital services from other hospital providers." (Doc. S-7 at ¶¶ 60, 62) In Counts IV and V, the plaintiff alleges that the defendants breached the Provider Agreements by denying coverage for inpatient, observation, and outpatient services. (Doc. S-7 at ¶¶ 70–72, 80–82) In Counts VI and VII, the plaintiff alleges that the defendants breached the Provider Agreements by failing to apply the "prudent layperson standard" to

---

[1] If the plaintiff is not a "provider" under the plan, Count II alleges alternatively that the defendants violated Section 641.513(5), Florida Statutes.

coverage determinations about emergency care. The plaintiff asserts that the defendants instead denied coverage for emergency care based on both the defendants' judgments and diagnosis codes prohibited by the Provider Agreement. (Doc. S-7 at ¶¶ 87–92, 97–105) In Counts VIII and IX, the plaintiff alleges that the defendants breached the Provider Agreements by requesting refunds and by unilaterally retracting payments to the plaintiff for implantable devices. (Doc. S-7 at ¶¶ 110–14, 119–23) In Counts X and XI, the plaintiff alleges that the defendants breached the Provider Agreements by failing to specify the basis for refund requests. (Doc. S-7 at ¶¶125–44) In Counts XII and XIII, the plaintiff alleges that the defendants breached the Provider Agreements by omitting the plaintiff from the defendants' provider directories. (Doc. S-7 at ¶¶ 145–55) In Counts XIV and XV, the plaintiff alleges that the defendants breached the Provider Agreements by either refusing to pay benefits, unilaterally retracting benefits, or requesting refunds of benefit payments for evaluation services and therapy services. (Doc. S-7 at ¶¶ 156–69) In Count XVI, the plaintiff alleges that Florida Blue breached the PPC Agreement by unilaterally updating Florida Blue's billing policy, which resulted in improper refund requests. (Doc. S-7 at ¶¶ 170–78) In Count XVII, the plaintiff alleges that Florida Blue breached the PPC Agreement by underpaying Medicare claims. (Doc. S-7 at ¶¶ 181–84)

## DISCUSSION

Although the complaint mentions neither ERISA nor an ERISA-regulated health plan, the defendants contend that the plaintiff challenges coverage determinations issued on at least two health plans regulated by ERISA. (Doc. 1-3 at ¶¶ 47–59) The defendants assert that ERISA completely preempts this action and creates federal question jurisdiction. (Doc. 1 at ¶¶ 3, 56–69) Also, the defendants contend that 28 U.S.C. § 1442(a)(1) permits removal because the defendants acted as federal officers in administering health plans sponsored by the federal government and regulated by the Federal Employee Health Benefits Act (FEHBA) and the Medicare Act. (Doc. 1 at ¶¶ 3, 28–55) Further, the defendants argue that the complaint requires dismissal because the complaint fails to afford the defendants sufficient notice of the plaintiff's claims and because ERISA completely preempts the breach of contract and Florida statutory claims.

The plaintiff denies that the action "relates to" ERISA. (Doc. 14 at 5–16) Although the plaintiff admits (Doc. 14-2 at ¶ 9) caring for patients enrolled in ERISA-regulated plans, the plaintiff claims to allege only breaches of the Provider Agreements and not challenges to coverage determinations governed by ERISA.

Ordinarily, removal requires more than a defense that presents a federal question. *Kemp v. Int'l Bus. Machs. Corp.*, 109 F.3d 708, 712 (11th Cir. 1997). However, if Congress "so completely [preempts] a particular area that any civil complaint raising this select group of [preempted] claims is necessarily federal in

- 4 -

character," the plaintiff's claim, although ostensibly a question of state law, becomes "a claim arising under the laws of the United States." *Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 63–64 (1987)).

ERISA Section 502(a) "creates a civil cause of action for participants and beneficiaries of ERISA plans to recover benefits or enforce rights under an ERISA plan." *Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1301 (11th Cir. 2010). Further, Section 502(a) "definitively 'converts an ordinary state common law complaint into one stating a federal claim . . . .'" *Borrero*, 610 F.3d at 1301 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004)). In other words, ERISA can completely preempt a state-law claim and create federal question jurisdiction over the claim. *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999).

Complete preemption occurs only if (1) the plaintiff could have sued under ERISA Section 502(a) and (2) no independent legal duty supports the plaintiff's claim. *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1345 (11th Cir. 2009) (citing *Davila*, 542 U.S. at 210). Preemption will not occur unless both conditions are present. *Borrero*, 610 F.3d at 1304. But if preemption occurs, a plaintiff's state law claim is "recharacterized" as an ERISA claim and federal question jurisdiction exists. *Kemp*, 109 F.3d at 712.

A plaintiff can sue under Section 502(a) if the claim "fall[s] within the scope of ERISA [Section] 502(a)" and if the plaintiff possesses standing to sue under ERISA.

*Conn. State Dental*, 591 F.3d at 1350. A healthcare provider suing to obtain benefits under ERISA-regulated health plans can challenge either the "rate of payment" or the "right to payment." Either a provider-insurer agreement or ERISA can create a dispute about the "rate of payment," and ERISA will not necessarily preempt a "rate of payment" challenge. However, only ERISA creates a "right to payment" challenge, and complete preemption results. *Borrero*, 610 F.3d at 1302 (citing *Conn. State Dental*, 591 F.3d at 1349–50) ("a 'rate of payment' challenge does not necessarily implicate an ERISA plan, but a challenge to the 'right to payment' under an ERISA plan does"). Accordingly, a "right to payment" claim "fall[s] within the scope of ERISA [Section] 502(a)." *Conn. State Dental*, 591 F.3d at 1350.

In *Connecticut State Dental*, a healthcare provider sued to challenge not only the insurer's refund requests (*i.e.*, rate of payment), but also the insurer's coverage denials (*i.e.*, right to payment). 591 F.3d at 1350–51. Accordingly, the insurer's coverage denials were determinations within the scope of ERISA, and ERISA completely preempted the claims. *Conn. State Dental*, 591 F.3d at 1352–53. Further, even a dispute about a single coverage determination under an ERISA-regulated plan establishes complete preemption. *Borrero*, 610 F.3d at 1303 (affirming the district court's exercising federal question jurisdiction because the plaintiffs had "not pursued exclusively state law clams, but instead ha[d] cast their pleadings in a way that implicates [ERISA] as well"); *Conn. State Dental*, 591 F.3d at 1351 ("Because [the

plaintiffs] complain, at least in part, about denials of benefits . . . their breach of contract claim implicates ERISA").

The plaintiff purports to challenge solely the rate of payment under the Provider Agreements rather than the right to payment under an ERISA plan. (Doc. 14 at 7; Doc. 21 at 11–12) For instance, the plaintiff contends that Counts I, XVI, and XVII contest underpayments in violation of the Provider Agreements.

Although the plaintiff might correctly characterize some claims as challenges to the rate of payment, the plaintiff, as in *Connecticut State Dental*, also contests benefit determinations under ERISA (*i.e.*, right to payment challenges). Counts IV through VII allege that the defendants improperly denied coverage for hospital services provided by the plaintiff. (Doc. S-7 at ¶¶ 63–106) And in Counts VI and VII, the plaintiff expressly asserts that the defendants "fail[ed] to pay" claims for emergency care. (Doc. S-7 at ¶¶ 85, 97) Further, the plaintiff alleges that the defendants substituted their judgment for the "prudent layperson standard" prescribed by the Provider Agreements and Florida law and consequently denied benefits for emergency care. (Doc. S-7 at ¶¶ 85, 89, 97, 101) Finally, although Counts I, II, XVI and XVII expressly seek recovery for underpayments and refund requests, these claims appear to challenge to right the payment as well. In other words, the defendants' conduct, which the plaintiff characterizes as "wrongful behavior," appears to include coverage denials under ERISA-regulated plans. The action

"fall[s] within the scope of ERISA [Section] 502(a)." *Conn. State Dental*, 591 F.3d at 1350.

Only a "participant or beneficiary" enjoys standing to sue under ERISA Section 502(a)(1)(B). *Hobbs v. Blue Cross Blue Shield of Ala.*, 286 F.3d 1236, 1241 (11th Cir. 2001). Consequently, a healthcare provider ordinarily lacks standing to sue under ERISA. *Borrero*, 610 F.3d at 1301–02 (citing *Hobbs*, 276 F.3d at 1241); *Conn State Dental*, 591 F.3d at 1346. However, a healthcare provider acquires "derivative standing" to sue under ERISA by obtaining a written assignment of a beneficiary's right to receive payment of benefits. *Conn. State Dental*, 591 F.3d at 1347–48.

In an effort to establish ERISA preemption, the defendants show that beneficiaries of ERISA-regulated plans assigned ERISA benefits to the plaintiff. (Doc. 1-3 at ¶¶ 14–17; Doc. 1-27 at 7; Doc. 1-29 at 7)  The plaintiff does not dispute the assignments. (Doc. 14 at 10, 12)  Rather, in an effort to preserve the action as asserting exclusively contract claims, the plaintiff argues that the assignments are immaterial because the plaintiff sues exclusively for alleged breaches of the Provider Agreements. (Doc. 14 at 10)  But even if the plaintiff is correct as to some counts, the plaintiff's distinction is irrelevant because other counts assert ERISA right-to-payment claims assigned to the plaintiff.  The plaintiff possesses standing to sue under ERISA Section 502(a) because beneficiaries of ERISA-regulated plans assigned ERISA benefits to the plaintiff. *Lee Mem'l Health Sys. v. Blue Cross & Blue*

*Shield of Fla., Inc.*, 248 F. Supp. 3d 1304, 1312 (M.D. Fla. 2017) (Chappell, J.) (concluding that an assignment of benefits endows a provider with standing to sue under ERISA)

Finally, complete preemption occurs only if each claim is supported by a legal duty independent of ERISA. *Conn. State Dental*, 591 F.3d at 1351 (citing *Davila*, 542 U.S. at 210). According to the plaintiff, the Provider Agreements impose an independent legal duty on the defendants. (Doc. 14 at 14–16) But because several of these purported breach of contract claims challenge the defendants' coverage determinations, ERISA, and not an independent legal duty, controls these claims. *Borrero*, 610 F.3d at 1305 ("because at least some of the allegations are dependent on ERISA, those claims are completely preempted and federal question jurisdiction exists"); *Conn. State Dental*, 591 F.3d at 1353 ("[the plaintiffs'] claims stray from the boundaries of their Provider Agreements into ERISA territory by asserting improper [coverage] denials. . . . Consequently, portions of their claims arise solely under ERISA or ERISA plans and not from any independent legal duty").

Also, the plaintiff asserts that Section 641.513, Florida Statutes, creates a legal duty independent of ERISA. Section 641.513 entitles healthcare providers lacking a contract with a health management organization (HMO) to reimbursement for emergency care provided to the HMO's subscriber. But again, Section 641.513 establishes no duty independent of ERISA because the ERISA-regulated plans create the duty to pay and ERISA controls the coverage determinations. *Rodriguez v. Health*

*Options, Inc.*, No. 03-20424-CIV, 2003 U.S. Dist. LEXIS 28326, at *12–13 (S.D. Fla. Aug. 27, 2003) (Moreno, J.) (exercising jurisdiction and granting a motion to dismiss a claim under Section 641.513 because ERISA preempted the claim). Because the plaintiff could have brought at least one claim under ERISA Section 502(a) and because no legal duty independent of ERISA supports each of the plaintiff's claims, ERISA completely preempts the plaintiff's action.[2]

---

[2] The federal officer removal statute, 28 U.S.C. § 1442(a)(1), permits "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, [sued] for or relating to any act under color of such office" to remove a civil action commenced in state court. The statute enjoys generous construction, and a private person "act[s] under" the color of federal office when the private person "assist[s], or . . . help[s] carry out, the duties or tasks of the federal superior. In other words, the private person must help federal officers fulfill a basic governmental task that the government otherwise would have had to perform." *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1143 (11th Cir. 2017) (citing *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147, 153–54 (2007)).

According to the defendants, the plaintiff challenges the defendants' coverage determinations on health plans administered in accord with FEHBA or the Medicare Act. (Doc. 1 at ¶¶ 32, 46; Doc. 1-3 at ¶¶ 28–45) This action appears to resemble the circumstances in several decisions allowing insurers administering FEHBA and Medicare plans to remove a state-court action challenging the insurers' administration of a plan. *Anesthesiology Assocs. of Tallahassee, P.A. v. Blue Cross Blue Shield of Fla.*, No. 03-15664, 2015 WL 6717879, at *2 (11th Cir. Mar. 18, 2005) (unpublished opinion) (affirming removal of an action based on an insurer's "failure to reimburse [a healthcare provider] for services allegedly covered by [FEHBA] plans [because] [e]ach FEHBA-covered plan is governed by a contract negotiated and interpreted by [the federal government], with which [the insurer] is compelled to comply"); *Assocs. Rehab. Recovery, Inc. v. Humana Med. Plan, Inc.*, 76 F. Supp. 3d 1388, 1391 (S.D. Fla. 2014) (Moore, J.) (allowing removal because an insurer "administer[ed] Medicare benefits on behalf of the federal government"); *Einhorn v. CarePlus Health Plans, Inc.*, 43 F. Supp. 3d 1268, 1270–71 (S.D. Fla. 2014) (Bloom, J.) (allowing removal because a Medicare beneficiary sued an insurer acting in accord with a contract with the federal government to administer Medicare benefits); *Truell v. Blue Cross & Blue Shield of Fla., Inc.*, No. 8:08-cv-103-T-24TGW, 2008 WL 11336248, at *2–3 (M.D. Fla. Mar. 31, 2008) (Bucklew, J.) (finding *Anesthesiology Associates* persuasive and allowing removal of an action challenging coverage determinations by an insurer administering FEHBA plans). *But see Premier Inpatient Partners LLC v. Aetna Health & Life Ins. Co.*, 362 F. Supp. 3d 1217, 1224–25 (M.D. Fla. 2019) (Scriven, J.) (disagreeing with *Associates Rehabilitation* and concluding that an insurer contracting with the federal government to administer Medicare plans cannot remove under the federal officer removal statute); *Dunn v. Blue Cross Blue Shield of Ala.*, No. 2:10-cv-2220-AKK, 2011 WL 13285142, at *11 – 13 (N.D. Ala. Mar. 17, 2014) (Kallon, J.) (recording disagreement with *Anesthesiology Associates*).

(continued...)

After the action is properly removed, dismissal of the complaint is warranted because the plaintiff fails to reasonably identify the claims supporting this action and instead pleads only generic allegations. The complaint fails to allege sufficient detail to permit the defendants to prepare an informed response. *Polk Med. Cntr., Inc. v. Blue Cross & Blue Shield of Georgia, Inc.*, No. 1:17-cv-3692-TWT, 2018 WL 624882 (N.D. Ga. Jan. 30, 2018) (Thrash, J.) (granting a motion to dismiss because the complaint failed to afford the defendants notice of which ERISA claims "the [p]laintiff bases its allegations upon"); *Woods v. Radiation Therapy Servs.*, No. 2:16-cv-897, 2017 WL 727766 (M.D. Fla. Feb. 24, 2017) (Steele, J.) (denying a motion to remand an action completely preempted by ERISA and directing the plaintiff to amend the complaint); *United Surgical Assistants v. Aetna Life Ins. Co.*, No. 8:14-cv-211-T-30MAP, 2014 WL 5420801 (M.D. Fla. Oct. 22, 2014) (Moody, J.) (directing the plaintiff "to more clearly state its ERISA and state law claims in such a way to permit [the defendant] to respond"); *Sanctuary Surgical Cntr., Inc. v. Connecticut Gen. Life Ins. Co.*, No. 11–80800–cv, 2012 WL 28263 (S.D. Fla. Jan. 5, 2012) (Hurley, J.) (granting

---

²(...continued)
Although the authority is divided and the issue is fairly debatable, even if ERISA does not preempt this action, the federal officer removal statute permits removal because the plaintiff sues to challenge the defendants' coverage determinations on FEHBA and Medicare health plans, which the defendants administered under the color of the Office of Personnel Management and the Centers for Medicare and Medicare Services, and because the defendants present a colorable federal defense. *Caver*, 845 F.3d at 1142 (requiring a defendant removing under Section 1442(a) to establish both that the defendant is a person sued because of actions performed under the color of federal office and that the defendant has a "colorable federal defense").

a motion to dismiss and directing the plaintiff to amend the complaint to support an ERISA claim).

## **CONCLUSION**

The plaintiff's motion to remand (Doc. 14) is **DENIED**. The defendants' motion to dismiss (Doc. 11) is **GRANTED**, and the complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**. No later than **JULY 12, 2019**, the plaintiff must amend the complaint. Failure to timely amend will result in dismissal without further notice.

ORDERED in Tampa, Florida, on June 21, 2019.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE