**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Tampa Division**

SARASOTA COUNTY PUBLIC
HOSPITAL BOARD d/b/a SARASOTA
MEMORIAL HEALTH CARE SYSTEM,

    Plaintiff,

v.

CASE NO.: 8:18-cv-02873-T-23SPF

BLUE CROSS AND BLUE SHIELD OF
FLORIDA, INC., and HEALTH OPTIONS,
INC.,

    Defendants.
_____/

## STIPULATED ORDER ESTABLISHING ESI PROTOCOL

Pursuant to Rules 16(b) and 26(f) of the Federal Rules of Civil Procedure, the parties have agreed to the following protocol for issues raised in the matter captioned above (herein the "Litigation") and related to the production of electronically stored information ("ESI")."[1]

    1.    <u>Definitions and Scope</u>. The following protocol and definitions shall be used in conjunction with the Federal Rules of Civil Procedure, Federal Rules of Evidence and applicable case law to guide the production of discoverable documents and electronically stored information when production commences. The following terms shall be defined:

    (a)    "Document(s)" means electronically stored information (ESI) existing in any medium from which information can reasonably be obtained or translated into reasonably usable form and shall have the same meaning as used in the Federal Rules of Civil Procedure and case law construing the same.

    (b)    "Native File(s)" or "Native Format" means the format they were created or maintained. Native files should be collected, processed and produced in a manner that insures that all files reflect accurate metadata associated with the creation and maintenance of the files and is not corrupted by the methods of the collection of the data. Nothing herein shall be

---

[1] The format for production of hard copy documents is addressed in Paragraphs 8, and 12.

interpreted to require the review and production of ESI located on back up tapes absent further agreement or Court Order.

    (c) "Metadata" herein means broadly any data about data.

    (d) "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format (TIFF) image is an example of a Static Image.

    (e) "Load/Unitization file" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Unitization file may also contain data relevant to the individual Documents, including extracted and user created Metadata, coded data, as well as OCR or Extracted Text.

    (f) "OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

    (g) "Extracted Text" means the text extracted from a Native File and includes all header, footer, and document body information.

    (h) "Receiving Party" shall mean the party receiving production of Documents in response to any request for production of document(s) pursuant to Fed. R. Civ. P. 34(a) or pursuant to initial production of documents identified in the party's Rule 26(a) disclosures.

    (i) "Producing Party" shall mean the party producing Documents in response to any request for production of documents pursuant to Fed. R. Civ. P. 34(a) or pursuant to initial production of documents identified in the party's Rule 26(a) disclosures.

  2. Search Protocol. The parties will commence meet and confers on or before September 13, 2019 to negotiate the search parameters applicable for each party to respond to pending discovery requests. The search parameters may include, but are not limited to, ESI sources, custodians, date scope, and search terms.

  3. <u>Review of ESI</u>. After the agreed-upon search protocol has been applied to the ESI sources identified during the parties' meet and confers the parties shall utilize attorneys or other legal staff to identify responsive ESI. Individual custodians shall not make responsiveness determination calls with respect to this ESI Protocol.

  4. <u>Commencement of Production</u>. The Producing Party shall arrange to preserve native versions of all electronically stored information to be produced, prior to its production. Production of Documents shall proceed at such time, place, and in such sequence as may be agreed to by the Producing Party and the Receiving Party. In the event agreement cannot be

reached, the Producing Party and the Receiving Party shall submit their respective positions to the Court, and the Court will issue further orders concerning the productions, as necessary.

5. <u>General Format of Production</u>. Subject to the provisions of Paragraph 7, Documents that are produced pursuant to this protocol shall be produced in TIFF form in the manner as described below. Notwithstanding the foregoing provisions of this paragraph, the Parties reserve the right to request that an alternative format or method of production be used for certain Documents, if such Document is not susceptible to production in the format or methods of production addressed herein. In that event, the Receiving Party and the Producing Party will meet and confer to discuss alternative production requirements, concerns, formats, or methods.

6. <u>Production Format</u>. Documents shall be produced according to the following formats:

(a) <u>Electronically Stored Information</u>. Except as provided in Paragraph 7(c) below, Document images shall be generated from electronic Documents and produced as a Group 4 compression single-page "TIFF" image that reflects the full and complete information contained on the original document, together with a load file or functional equivalent specified in Paragraph 6(b) that contains the metadata as set forth in Paragraph 12. In the event a Document is redacted, the Producing Party shall withhold the redacted text for that Document. The failure to withhold such text for a redacted document by a Producing Party shall not be deemed a waiver of the privilege associated with that Document.

(b) <u>Load/Unitization File Structure</u>. To the extent possible without undue burden, the Producing Party shall produce a unitization file ("load file") for all produced Documents in accordance with the following formatting, including a separate load file for any native Documents:

**OCR and Extracted Text Files (.TXT Files)**:

- Single text file per document containing all the document's pages
- Pages separated by form feed character (decimal 12, hex 0xC)
- Filenames should be of the form:
  <Bates num>.txt
  Where <Bates num> is the BATES number of the first page in the document.
- Text must be encoded in UTF-8.
- To the extent available, the text of ESI for unredacted documents shall be extracted directly from the native file and each text file will be named for the BegBates number. Redacted documents will have text files based on Optical Character Recognition ("OCR") consistent with Paragraph 15.

**Images Files**:

- Group IV, 300 DPI
- Single page per image
- Single image per file

- TIFF FORMAT Filenames should be of the form:
  &lt;Bates num&gt;.&lt;.tif&gt;
  Where &lt;Bates num&gt; is the BATES number of the page
- Images shall be reduced by up to 10% to allow for a dedicated space for BATES number and stamping of documents.

**Index Files**:

- Comma Separated Value (.CSV) files (commonly .DAT files)
- First line must contain the column/field names (set forth in paragraph 12 herein)
- Every row must have the same number of columns/fields (empty values are acceptable)
- Text must be encoded in UTF-8
- Values must be enclosed by decimal 17, hex 0x11 (ascii device control 1)
- Values must be separated by decimal 19, hex 0x13 (ascii device control 3)

**Native Index Files**:

- All lines contain data – first row must NOT contain column headers.
- Every row must have 2 columns/fields (empty values are NOT acceptable)
    - First column/field must contain the BATES number for the document
    - Second column/field must contain the filename (NOT the full path) of the native file. Filenames must be unique in the production – unless the content is identical (for example, a native and an OCR text file may both be named XYZ01234567.TXT if they are identical).
- Text must be encoded in UTF-8

(c) <u>Resolution of Production Issues</u>. Documents that cannot be read because of imaging or formatting problems shall be promptly identified by the Receiving Party. The Producing Party and the Receiving Party shall meet and confer to attempt to resolve problem(s), to the extent the problem(s) are within the Parties' control.

(d) <u>Native Format Documents</u>. The Parties agree that to the extent they are determined to be relevant and not unduly burdensome to produce and are in the possession, custody, or control of the Producing Party, spreadsheets and presentation files, including but not limited to Microsoft Excel and PowerPoint files and Lotus 123 files (or similar spreadsheets or presentation files created using a different software program) (collectively referred to as "Native Format Documents") must be produced in native format. Similarly, files that are not amenable to conversion to TIFF format will be produced in their native form and shall be considered Native Format Documents for purposes of production under this Paragraph 7(d) so long as they are determined to be relevant and not unduly burdensome to produce. All Native Format Documents that are data complications in spreadsheets, Microsoft Excel, or in delimited text formats, must contain all underlying data un-redacted with all underlying formulas and algorithms intact unless they are redacted consistent with Paragraph 15.

To the extent Producing Party produces video, animation, or audio files, such documents shall also be produced in Native Format. The parties shall produce CAD or similar engineering drawings or schematics in Native format as well where production is practicable and not duplicative.

A placeholder image will be included in the TIFF files indicating the BegBates number of the Native Format Documents and an indication that the document was produced in native format. A relative file path or link to the Native Format Document in the .dat file shall be provided as required in Paragraph 12 below. The parties will meet and confer regarding the good cause need to produce or receive other documents in native format. All other documents will be produced as single-page TIFF images with corresponding multi-page text, or in native file format if applicable, and necessary load files. Native files, along with corresponding metadata, will be preserved. In certain circumstances, variations to the production format specified in this Protocol may be necessary. In such circumstances, the Parties will meet and confer regarding the production format.

7. <u>Production Media</u>. A Producing Party shall produce Documents through a secured FTP site, on a CD-ROM, DVD, external hard drive, or such other readily accessible computer or electronic media as the Producing Party and the Receiving Party may hereafter agree upon (the "Production Media"). Information that shall be identified in conjunction with the Production Media shall include: (1) the production date, and (2) the confidentiality notation required by the Protective Order entered in this case, if the Production Media contains Confidential Information, as defined in the Protective Order. The face of the Production Media or any correspondence accompanying the Production Media shall also contain the Bates Number range(s) of the Documents on or in the Production Media. The Producing Party shall encrypt, "lock", or password protect the production. The Producing Party shall include with the production the necessary password(s) and/or an explanation of how to decrypt the files.

8. <u>Document Unitization</u>. When scanning paper documents into Document Images as described in paragraph 4(a), they shall be unitized in a manner so as to maintain the document(s) and any attachments, as they existed in their original state. For electronic documents, the relationship of documents in a document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process from native format to TIFF, provided however, that the Parties shall only be required to present one level of parent/child relationship. If a document (including any email) is produced, all non-privileged attachments to it shall be produced. Likewise, if any attachment to a document is produced, all non-privileged portions of the email or other parent document and all other non-privileged attachments to that parent email or other document shall be produced. Document Images generated from attachments to e-mails stored in Native Format shall be produced contemporaneously and sequentially immediately after the parent e-mail. For hard copy documents, the parties do not need to provide metadata or text files aside from identifying in the hard copy metadata field described in Paragraph 12 (Row 31) below that the document is a hard copy document. Bates numbering of a parent document and any attachments shall be sequential such that the parent document has the lowest value Bates Number when compared to its attachment(s).

9.      _Duplicates_.  A Producing Party who has more than one identical copy of an electronic document (*i.e.,* the documents are actual duplicates) need only produce a single copy of that document (as long as all family relationships are maintained).  A Producing Party need not produce the same electronically stored information in more than one form.  A Producing Party may de-duplicate its production only by custodian or non-custodial source unless otherwise agreed.  For purposes of de-duplication, the parties may tie-duplicate globally (e.g., across custodians) using Relativity processing or an industry equivalent. To the extent reasonably accessible, all custodians of de-duplicated items will be listed in the "All Custodian" field.  A Producing Party will make a reasonable attempt to use a uniform description of a particular custodian across productions.

10.     _Bates Numbering_.  Each Producing Party shall Bates number its production(s) as follows:

(a)     _Document Images_.  Each page of a produced Document shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not unreasonably obliterate, conceal, or interfere with any information from the source document.  The Bates Number shall contain a prefix associated with the Producing Party's name followed by 8 numbers (*e.g.,* ABCD00000001).  The Producing Party will use a consistent prefix throughout the matter.  Thus, once a party chooses a prefix, *e.g.* ABCD, it shall not later produce a Document using a different prefix, *e.g.* EFGH unless necessary for organizational purposes.  No other legend or stamp will be placed on the Document Image other than a confidentiality legend (where applicable), redactions, the Bates Number identified above, and any other internal tracking number that the Producing Party may choose to use.

(b)     _Native Format Documents_.   In order to preserve the integrity of Native Format Documents, no Bates Number, confidentiality legend or internal tracking number should be added to the content of the Native Document.  Until such time as the Producing Party and the Receiving Party meet and confer and address procedures for maintaining the confidentiality of Native Format Documents(s) as required in Paragraph 7(d) above, any Native Format files shall remain designated as "Confidential" as set forth in the Protective Order.

11.     _File Naming Conventions_.  To the extent reasonably possible given vendor procedures and ability, each Document Image shall be named with the unique Bates Number for the document.

12.     _Metadata_. The Producing Party shall produce the metadata information described below with each production and in the format described in Paragraph 6 above.  For images generated from native electronic documents, a Producing Party shall produce with each production the following fields, where available and to the extent the information exists within the document such that it may be extracted and included in the load file automatically and without undue burden. The parties agree to use Eastern Standard Time as the time zone during processing.  The field naming conventions shall be the following unless otherwise agreed and consistently applied for each production:

| | **FIELD** | **DEFINITION** | **DOC TYPE** |
|---|---|---|---|

| # | Field | Description | Category |
|---|---|---|---|
| 1 | CUSTODIAN | (all Custodians/source locations from which the document is produced) | GENERAL |
| 2 | ALL CUSTODIANS | (to contain custodian information about custodian/source for items de-duplicated across custodians) | GENERAL |
| 3 | BEGBATES | | GENERAL |
| 4 | ENDBATES | | GENERAL |
| 5 | BEGATTACH | First Bates number of a family range (i.e. Bates number of the first page of the parent email) | GENERAL |
| 6 | ENDATTACH | Last Bates number of a family range (i.e. Bates number of the last page of the last attachment) | GENERAL |
| 7 | HASHVALUE | MD5 Hash or SHA Value for Edocs | EDOCS |
| 8 | LINK TO TEXT FILES CONTAINING EXTRACTED TEXT | Link to text files containing extracted text should be included in the .dat file, but the extracted text itself should not be included in the .dat file. | GENERAL |
| 9 | LINK TO NATIVE FORMAT DOCUMENTS | | GENERAL |
| 10 | AUTHOR | Creator of document | EDOCS |
| 11 | LASTMODIFIEDBY | Person who has modified document | EDOCS |
| 12 | LASTMODIFIED (mm/dd/yyyy) | Last Modified date | EDOCS |
| 13 | LAST MODIFIED TIME | Last Modified time | EDOCS |
| 14 | DATECREATED (mm/dd/yyyy) | Document creation date | EDOCS |
| 15 | TIMECREATED | Document creation time | EDOCS |
| 16 | DOCUMENT FILE NAME | | EDOCS |
| 17 | TITLE FROM DOCUMENT PROPERTIES | | EDOCS |
| 18 | INTFILEPATH | Personal Folders\Board Meetings\Board Meeting Minutes for 7/1/03.msg | EDOCS |
| 19 | FILE EXTENSION | | EDOCS |
| 20 | NATIVE PATH | Relative path to the native version of the ESI for the Native Format Documents | EDOCS |
| 21 | FROM | Sender | EMAIL |
| 22 | TO | Recipient | EMAIL |
| 23 | CC | Additional Recipients | EMAIL |
| 24 | BCC | Blind Additional Recipients | EMAIL |

| 25 | SUBJECT | Subject line of Email | EMAIL |
|----|---------|----------------------|-------|
| 26 | PARENTBATES | BeginBates number for the parent email of a family (will not be populated for documents that are not part of a family) | EMAIL |
| 27 | DATESENT (mm/dd/yyyy) | Date sent | EMAIL |
| 28 | TIMESENT | Time sent | EMAIL |
| 29 | EMAIL RECEIVED DATE | Date received | EMAIL |
| 30 | EMAIL RECEIVED TIME | Time received | EMAIL |
| 31 | HARD COPY DOCUMENT | Populated with a "Y" for any hard copy documents | HARD COPY |

13. <u>Search Terms</u>. The Receiving Party and the Producing Party shall meet and confer on search terms to be used to identify electronic documents collected that will be reviewed for possible production. The Producing Party shall undertake a reasonable investigation to identify potentially relevant search terms and propose them to the Receiving Party. During the course of the litigation, the Receiving Party and the Producing Party may modify the search terms by agreement. An initial list of search terms shall be agreed upon no later than 30 days following rulings on any objections or motions for protective order filed by a Producing Party relating to any request for production of Documents propounded by Plaintiffs.

14. <u>Databases</u>. To the extent discovery requires production of discoverable electronic information contained in a database, in lieu of producing the database, the Producing Party shall produce a list of all fields within the database, and exemplar reports from the database in image format as described in Paragraph 7. The parties shall meet and confer on search strategies to be used to identify electronic records from such database(s) including whether it would be appropriate and necessary to produce any user or administrative manuals for the database. During the course of the litigation, the Receiving Party may request additional, non-duplicative search strategies for identified databases.

15. <u>Redactions</u>. During the pendency of the litigation, an electronic copy of the original unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration, or addition the content of such data including any metadata associated therewith. For ESI that is redacted, OCR shall be performed on the redacted version of the document and the corresponding OCR text files shall be produced. The OCR text file shall be provided in ASCII text format and named with the Bates number of the first page of the corresponding document followed by the extension ".txt." Such OCR files shall be provided as document level files suitable for importing into Concordance. To the extent available, the parties may apply redactions natively to Native Format Documents. When ESI is redacted and an OCR text file is produced, the requirement to produce (extracted text metadata) in Paragraphs 6 and 12 above is superseded and extracted text will not be produced.

16. <u>Privilege Logs</u>. The Producing Parties will produce privilege logs in Excel format or a similar electronic format that allows text searching and organization of data. A Producing

Party will produce a separate privilege log for each production within a reasonable time after the production of documents for which a privilege is asserted. When there is a chain of privileged e-mails, the Producing Party need only include one entry on the privilege log for the entire e-mail chain, and need not log each e-mail contained in the chain separately. Absent exigent circumstances, the production of a privilege log for a custodian or his/her department shall be not less than 20 days prior to that custodian's deposition. The Producing Party and the Receiving Party may modify the deadlines for production of privilege logs by agreement. The Parties agree the following categories of documents do not need to be logged:

(a) <u>Communications with Outside Counsel.</u> The Parties agree that no Party is required to list on a privilege log communications between exclusively between a Party and its outside counsel, an agent of outside counsel other than the Party, any non-testifying experts, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts.

(b) <u>Outside Counsel Work-Product.</u> The Parties agree that no Party is required to list on a privilege log privileged materials or work product created or received by its outside counsel, an agent of outside counsel other than the Party, any non-testifying experts, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts. This provision extends to the attachments of privileged or work product emails. This provision also extends to work product created by the client at the request, instruction, or guidance of outside counsel.

(c) <u>Redacted Documents.</u> Redacted documents need not be logged if:

(i) The reason for the redaction and any other information that would otherwise appear on a log is noted on the face of the document;

(ii) The bibliographic information (to, from, date, subject, etc.) is not redacted;

(iii) The Parties provide the metadata identified in Paragraph 12 for each redacted document.

17. <u>Inadvertent Disclosure.</u> Any inadvertent disclosure or production of Privileged ESI will not constitute a waiver of any such privilege by the disclosing Party. In the event that the Receiving Party discovers that it has received Privileged ESI, it will immediately notify the Producing Party. Upon request of the Producing Party, the Receiving Party will promptly destroy or return to the Producing Party any Privileged Documents so identified and represent that such destruction has been completed (or explain the extent to which such destruction was not completed if not feasible). The Producing Party shall provide a privilege log for the inadvertently produced documents within 10 days of being notified that the inadvertently disclosed documents have been destroyed. The Receiving Party will not introduce the Privileged ESI as evidence in this proceeding or any other case, proceeding or action, and will not otherwise use or disseminate the Privileged ESI for any reason, including to argue that there has been a waiver of any privilege as a result of the manner in which the Privileged ESI was produced.

18. <u>Discovery and Admissibility</u>.  Nothing herein shall be construed to affect the discoverability or admissibility of any document or data.  All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time.

19. <u>Objections Preserved</u>.  Nothing in this ESI Protocol shall be interpreted to require disclosure of relevant information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity.  The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents.

20. <u>Modifications</u>.  Any practice or procedure set forth herein may be varied by agreement of the parties, confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of documents or ESI.

21. <u>Costs</u>.  Each party will be responsible for its own production costs unless otherwise ordered by the Court.

22. <u>Retention</u>.  The parties agree to take reasonable steps to ensure that relevant electronically stored information is not permanently deleted in the ordinary course of business, nor that it is altered.


DONE AND ORDERED in Tampa, Florida, this 8th day of October 2019.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE